

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JUDITH YELLOW, | CIV 07-3016 |
| Plaintiff, | |
| -vs- | OPINION AND ORDER |
| MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, in his official capacity, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INTRODUCTION

Plaintiff filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the defendant, through his representatives, engaged in a course of conduct towards her constituting discrimination based upon her gender, conducted a hostile work environment and engaged in retaliation.

Defendant filed a motion for summary judgment, contending that plaintiff 1) failed to exhaust her administrative remedies as to some of her retaliation claims, 2) failed to establish a prima facie case of hostile work environment, (3) failed to establish that defendant is vicariously liable, and 4) failed to establish a prima facie case of retaliation.

## SUMMARY JUDGMENT CONSIDERATIONS

The summary judgment standard is well known. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (internal citations omitted). The party opposing summary judgment must respond to the moving party's statement of facts "with a separately numbered response and appropriate citations to the record." D.S.D. LR 56.1(B). "In order to establish a genuine issue of material fact," the non-moving party, the plaintiff here, can "not 'simply rest upon the pleadings'" nor can "he rely on conclusory statements in his affidavit." Jeseritz v. Potter, 282 F.3d 542, 545 (8th Cir. 2002) (quoting Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 (8th Cir.1998)). Unsupported self-serving allegations are insufficient to establish a genuine issue of material fact. Smith v. International Paper Co., 523 F.3d 845,848 (8th Cir. 2008). Rather, plaintiff must "point to evidence in the record sufficient to raise a genuine issue for trial." Jeseritz v. Potter, 282 F.3dd at 546 (quoting Mathews, 143 F3d. at 1164).

## FACTS

The court must determine the facts in the light most favorable to the plaintiff and the court will do that. Plaintiff was employed by the Rosebud Indian Health Services Hospital ("IHS") from 1992 until the fall of 2005. In April 2003, plaintiff obtained a restraining order against Rick Young, then a Rosebud Sioux Tribal Officer with no employment connection with the Rosebud IHS. Rick Young was allegedly upset that plaintiff had fired his niece and came to the IHS and threatened plaintiff. Rick Young was not prevented from seeking medical attention at IHS but was not to come within 20 feet of plaintiff.

In 2003, plaintiff's immediate supervisor was Joan Azure. Azure's supervisor was Dale Young ("Young"). Azure left Rosebud IHS in January of 2004 and Young became plaintiff's supervisor.

Beginning in November 2003 and continuing until September 2004, Young made comments on at least nine occasions to plaintiff about dancing on tables at the Vetal Bar and made suggestions about the "chafing of her legs sliding down a pole and bottoming out on a pole because of a sprained ankle." He also made comments regarding the removal of her clothes while dancing on tables. When he made such comments in December 2003, he lifted his leg and

said plaintiff would be sore from coming down the pole. Plaintiff did not tell Young she found his comments offensive until August 16, 2004.

Between April and September 2004, she caught Young staring at her breasts five times. Plaintiff did not tell Young she found his actions offensive but instead pulled her sweater over herself, standing with her arms folded not looking at Young as a non-verbal cue that she was disgusted with what he was doing. Because Young was a former EEO counselor, she assumed he should have "known better."

In addition to the above conduct, Young was "uncivil" to plaintiff and would tell her to do things in front of the people she supervised.

In August 2004, plaintiff filed an "EEO complaint based on Retaliation" against Young based on plaintiffs' perceived treatment of her sister by Young. This occurred two weeks prior to filing her own complaint against Young.

Plaintiff took sick leave beginning on September 7, 2004. She contends her sick leave was the result of the mental health issues she suffered as a result of the ongoing harassment by Young.

Plaintiff told Penny Wilson, acting CEO, on September 8, 2004, that she was filing an EEO complaint of sexual harassment against Young. She did not ask Wilson for any help but assumed Wilson would give "help and assistance." An investigation was already underway so she did not ask Wilson to investigate her claims.

On the same date that plaintiff advised Wilson she was filing a complaint against Young, Wilson removed plaintiff from Young's chain of command and placed her under the supervision of Ardean Vernon ("Vernon").

Within plaintiff's EEO complaint against Young, plaintiff also complained that she was not being notified when Rick Young was at the IHS so that she could avoid him. On September 28, 2004, plaintiff was advised that her office would be moved. Penny Wilson told plaintiff her office was moved away from the reception area to protect plaintiff from Rick Young - to prevent him from having ready access to her when he came to the Rosebud IHS. Wilson also told plaintiff her office was moved because they needed space for the new benefits coordinator to

conduct patient interviews in private. Plaintiff contends the office move was in retaliation for filing a sexual harassment claim.

Plaintiff's September 7, 2004, "sexual harassment complaint" sets forth that in November 2003, plaintiff was "teased" by Young and the following exchange took place:

Young: "I heard you were dancing on tables in Vetal."
Yellow: "Gee, where did that come from?"

Plaintiff contends that she displayed an expression of dislike during that exchange. She contends that a second exchange took place in December 2003:

Young: "Yeah, Judith's going to dance on tables til' closing at the Vetal Bar. She's gonna close the place down at 2 o'clock.
Yellow: "No, I'll be there until morning."

Plaintiff contends that she was embarrassed and tried to leave Young's office quickly. He stood up from his desk and stated:

Young: "You'll be so chaffed from coming down those poles" (lifting his legs to show where the chaffing would be).

Plaintiff contends that he again "teased" her in front of co-workers about dancing in the Vetal Bar on the table in January 2004. She "paid no attention to the remark." Young made a similar remark in February 2004. In March 2004, plaintiff was limping and the following exchange took place:

Young: "What did you bottom out from the pole . . . did you use too much baby oil?"
Yellow: "No, I playing (sic) with the kids and turned my ankle."
Young: "Oh, I thought maybe you went dancing."

Plaintiff contends that she was embarrassed and immediately left Young's office and told a co-worker. She also sets forth in her EEO complaint instances where Young was staring at her "up and down" or staring at her chest. She stated that:

> I have pacified this problem with being a forgiving person. I thought I could overcome the treatment I had been purposely exposed to . . . I had no intentions of pursuing any formal complaint against Dale . . . He is my immediate supervisor who holds authority over me to take disciplinary action against or fire me . . .

4

Plaintiff further set forth in her EEO complaint that Dale Young had failed to protect her from Councilman Rick Young, Rick Young's wife Pola, and Rick Young's daughter Kayta (who worked at Rosebud IHS). She set forth in her complaint:

> And another thing, I know you have no respect for me by the way you have talked to me and I remember the way you teased my (sic) about dancing on tables in the bar.

On September 8, 2004, Dale Young sent plaintiff a letter to her home address stating:

> From our conversation of 09/07/2004 and your concerns that you raised on comments that I made months ago, I would like to say if I have offended you in any way, I do sincerely apologize. I did not mean anything to discredit you or to be taken offensively. In the future, if you're ever uncomfortable with what I say, or how I say it, please tell me immediately or ask to see me in private (a third party can be in attendance). Furthermore, if there are any other issues you would like to discuss, please let me know so that we can clear the air.

Plaintiff also submitted an undated "EEO complaint based on retaliation," wherein she set forth that she discovered on September 24, 2004 (while she was on medical leave), that hospital staff were gossiping that she had been suspended. She requested Vernon to send a memo to staff advising that plaintiff would return to work, which she alleged Vernon failed to do. When she inquired whether the rumors were true or whether she still had a job, she was asked whether she was going to "put in her leave." She claims Vernon failed to be compassionate and sympathetic toward plaintiff, and plaintiff felt like she was an outcast for reporting the sexual harassment. She claims that, over the next few months, she wanted to claim leave but was not allowed to do so. She was threatened with being AWOL because she was absent without having requested leave. The record shows that she eventually was allowed to access the computer leave system from her home so that she could claim leave. Any concern that plaintiff was AWOL was thereafter abandoned.

Plaintiff was released back to work by her doctor in October of 2004 and was told she could work half days from October 13-25, 2004, and could work full-time thereafter.

On October 27, 2004, plaintiff claimed that she injured her shoulder moving boxes. She first sought medical treatment for that claimed injury on November 1, 2004. She did not work from October 27, 2004 to December 27, 2004.

On December 27, 2004, plaintiff called the administration office, asking to speak with acting CEO Dixie Gaikowski (who began working as acting CEO on that date). Plaintiff intended to talk to Gaikowski about her sexual harassment complaint and about her concerns with Penny Wilson. Instead, plaintiff reached Wilson on the telephone. Wilson advised plaintiff to "follow her chain of command." Later in the day, plaintiff informed Gaikowski about Rick Young's harassment and her restraining order against him.

Between September 8, 2004, and January 6, 2005, plaintiff only worked a total of 39 hours. She did not return to work at Rosebud IHS after January 6, 2005.

On February 4, 2005, plaintiff filed a worker's compensation claim for an injury allegedly resulting from moving boxes on December 30, 2004. She claimed she was unable to work in January and February of 2005 due to the December injury to her trapezius (sic) muscle. That claim was denied as untimely.

On February 18, 2005, Vernon spoke with plaintiff and told her she needed to contact Humphrey Long to address the repayment of COP (continuation of pay) benefits she had received after filing her workers compensation claim. Plaintiff did so and set up a COP payment plan within two days.

In March of 2005, Vernon issued a letter to plaintiff, charging her with being AWOL (absent without leave). Plaintiff contacted the Aberdeen Area Office and was allowed to "put in her leave" electronically from home.

On April 8, 2005, Vernon sent plaintiff a "fitness for duty" letter. Vernon sent letters again on April 18 and 27, 2005. Plaintiff complied with the letters after she secured the required medical provider information. However, she did not submit that information to Vernon but instead to the EEO officer because plaintiff did not want her supervisor to have plaintiff's medical information.

Plaintiff filed a request for reasonable accommodation on April 19, 2005. A mediation was scheduled. On June 1, 2005, plaintiff was informed that the mediation was cancelled. A conference call was held on June 8, 2005, during which plaintiff made a verbal request for accommodation. Her request was denied. She submitted an amended request to Vernon on June

6

20, 2005. That request was denied due to "incomplete medical documentation" and the denial letter outlined her appeal rights.

On July 12, 2005, plaintiff sent a letter to Rosanne Levalli-Unabai, the Aberdeen Area EEO Officer, asking to be considered for a reassignment to Rapid City. She also requested administrative leave until permanent reassignment. Plaintiff agreed on August 1, 2005, to combine her EEO complaints and reasonable accommodation requests.

On August 1, 2005, the Aberdeen Area Office offered plaintiff a position at the Sisseton, South Dakota, hospital. The offer included moving expenses. Plaintiff declined that offer because she apparently had already moved to Rapid City and wanted to be accessible to her counselors and physicians in Rapid City.

On September 7, 2005, plaintiff filed a "Reconsideration request under the American Disabilities Act of 1990 and Psychiatric Disabilities" requesting re-assignment to the Sioux San Hospital in Rapid City, South Dakota, retroactive administrative leave, and moving expenses. On September 12, 2005, the Aberdeen Area Office instead again offered plaintiff a position at the Sisseton Hospital, again including moving expenses. She rejected that offer on September 19, 2005. On September 21, 2005, plaintiff was offered a position at Sioux San Hospital. She accepted that position on September 26, 2005.

Following her September 2004 report of sexual harassment, plaintiff took 512.5 hours of sick leave and 375 hours of annual leave (about 22 weeks). She was granted an additional 472.25 hours of paid administrative leave (nearly 12 weeks). She was then granted 680 days of leave without pay (17 weeks). From the date of her initial sexual harassment claim in September 2004 until she was allowed to transfer to a job in Rapid City in September 2005, plaintiff worked less than 5 days. She was nonetheless paid in the form of leave for the entire year.

Plaintiff contends that the "harassing and hostile treatment" by her supervisors caused plaintiff to suffer a mental and physical breakdown. She contends that her medical providers told her that she should not go back to work at the Rosebud IHS hospital. Plaintiff contends that she suffered an adverse employment action because she had to transfer to a position which paid less and constituted a demotion.

IHS instituted a sexual harassment policy in 1995. On March 22, 2004, all IHS employees were reminded of the policy and IHS's position on discrimination and reprisal. The

policy requires employees to inform or advise co-workers when their conduct is offensive and request them to immediately stop such behavior. The policy also provides for designated EEO counselors who can advise employees on the procedures for filing complaints. Plaintiff was a designated EEO counselor and was aware of IHS policy and EEO procedure for complaining of offensive conduct.

**I. Exhaustion.**

Title VII of the Civil Rights Act of 1964 gave private sector employees a private cause of action against their employers for employment discrimination. The statute requires employees to comply with certain time restrictions in both exhausting remedies available from the Equal Employment Opportunity Commission (EEOC) and in filing a civil suit in federal district court. *See* 42 U.S.C. § 2000e-5. The Equal Employment Opportunity Act of 1972 expanded Title VII to include federal employees.

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). Federal regulations require a federal employee who believes that she has been discriminated against to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The employee must thereafter timely file an administrative charge with the EEOC. 42 U.S.C. § 2000e-5(e). "[F]ailure to exhaust administrative remedies is an affirmative defense that a defendant must prove." Miles v. Bellfontaine Habilitation Center, 481 F.3d 1106, 1107 (8th Cir. 2007).

The Eighth Circuit has held "that a Title VII plaintiff generally does not exhaust her administrative remedies unless she complains of the discriminatory behavior to the EEOC before filing a lawsuit." Fair v. Norris, 480 F.3d 865, 867 n. 2 (8th Cir. 2007). "Although an EEOC complaint 'need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court,' it must nevertheless 'be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.'" *Id.* (*quoting* Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1123 (8th Cir.2006)).

8

> The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge.

Cottril v. MFA, Inc., 443 F.3d at 634 (*quoting* Nichols v. Am. Nat'l Ins. Co., 54 F.3d 886, 887 (8th Cir. 1998)) (emphasis supplied).

Plaintiff signed a formal EEOC complaint on September 7, 2004. The date that she filed the retaliation complaint is unclear. In any event, she only named her then supervisor, Ardean Vernon, in her retaliation complaint. The defendant contends that any later claims in plaintiff's deposition that Penny Wilson, Dale Young, or Dixie Gaikowski retaliated against her must be dismissed.

"Generally, '[t]he defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies.'" Ballard v. Rubin, 284 F.3d 957, 964 n. 6 (8th Cir. 2002) (*quoting* Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 238 (4th Cir.1987)). The defendant has carried its burden. There is no genuine issue of any material fact as to whether the plaintiff failed to exhaust administrative remedies as to claims of retaliation by anyone other than Ardean Vernon. Summary judgment is thus appropriate as to claims not exhausted. Bailey v. U.S. Postal Service, 208 F.3d 652, 655 (8th Cir. 2000).

## II. Prima Facie Case as to Sexual Harassment.

In order to establish a claim of hostile work environment, a plaintiff must show that:

> (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment in the workplace; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

Hervey v. County of Koochiching, 527 F.3d 711, 721 (8th Cir. 2008). *Accord*, Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d 734, 738 (8th Cir. 2005).

9

> To establish the fourth element, a plaintiff must be (sic) prove that the harassment was "so severe or pervasive as to alter a term, condition, or privilege of employment." The conduct at issue must not be "merely rude or unpleasant." A plaintiff must establish harassment that is "so intimidating, offensive, or hostile that it 'poisoned the work environment.'" A plaintiff must be able to show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult."

Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d at 738 (internal citations omitted). Harassment affects a term, condition, or privilege of employment if it is so severe or pervasive that it creates an abusive working environment. Harris v. Forklift Sys., Inc., 501 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993); Smith v. St. Louis University, 109 F.3d 1261 (8th Cir. 1997). The conduct "must be more than merely offensive, immature or unprofessional; it must be extreme." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1047 (8th Cir. 2005). "Conduct that does not exceed the threshold of severity is insufficient to create a prima facie case of sexual harassment." *Id.*

"The conduct must be sufficient to create a hostile work environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (citing Harris, 510 U.S. at 21-22, 114 S. Ct. at 370). The relevant factors for determining whether conduct rises to the level of abusiveness required for a successful hostile work environment sexual harassment claim under Title VII include (a) the frequency of the discriminatory conduct; (b) its severity; (c) whether it is physically threatening or humiliating, or a mere offensive utterance; and (d) whether it unreasonably interferes with an employee's work performance. Harris, 501 U.S. at 23, 114 S. Ct. at 371; Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Wright v. Rolette County, 417 F.3d 879, 885 (8th Cir. 2005) (quoting Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (internal citations omitted)). "In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive." *Id.*

As a matter of law, plaintiff has not set forth facts which objectively rise to the level of abusiveness required to create a *prima facie* case of hostile work environment.

**III. Affirmative Defense.**

Defendant is vicariously liable for Young's conduct if Young and Yellow were co-workers and plaintiff has shown that her employer "knew or should have known of the conduct and failed to take proper remedial action." Cheshewalla v. Rand & Son Const. Co., 415 F.3d 847, 850 (8th Cir. 2005). Where, on the other hand, Young was plaintiff's supervisor, her employer "is vicariously liable for the harassment unless it can establish the affirmative defense" defined in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998):

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Faragher v. City of Boca Raton, 524 U.S. at 807-08, 118 S.Ct. at 2292-93.

Plaintiff did not suffer any tangible employment action as a result of Young's harassment. Defendant can assert a Faragher affirmative defense by showing that (a) Rosebud IHS exercised

reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Plaintiff did not report Young's offensive conduct to a supervisor while she was employed. When she did file a written complaint, Young was immediately removed as her supervisor. She did not avail herself of the opportunity to be supervised by someone other than Young because she worked less than 40 hours after the change in supervisors. Plaintiff requested a transfer to Sioux San Hospital in Rapid City. The so-called demotion was at her insistence and occurred after she declined to return to work under a new supervisor. Defendant has shown that he is entitled to the Faragher affirmative defense. There is no genuine issue of material fact as to defendant's liability for Young's behavior toward plaintiff.

### IV. Prima Facie Case as to Retaliation.

"Federal law prohibits an employer from discriminating against an employee who 'has opposed any practice' made unlawful by Title VII, or 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing' under the statute." Hervery v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008) (*quoting* 42 U.S.C. § 2000e-3(a), and Barker v. Missouri Dept. of Corrections, 513 F.3d 831, 834 (8th Cir.2008)). Plaintiff has presented no direct evidence of retaliation. We must therefore apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005). Therefore, "the plaintiff first must demonstrate a prima facie case of retaliation" to survive summary judgment. *Id.*

A "minimal evidentiary showing satisfies a plaintiff's burden of production" at the *prima facie* stage of this case. Pope v. ESA Services, Inc., 406 F.3d 1001, 1007 (8th Cir. 2005). At this stage, the plaintiff's burden "is not onerous." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The United States Supreme Court announced a new standard for determining whether a plaintiff has established a retaliation prima facie case in Burlington N. & Santa Fe R. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To establish a prima facie case of retaliation, plaintiff must demonstrate that

> (1) she engaged in protected conduct;
> (2) reasonable employees would have found the challenged retaliatory action materially adverse; and
> (3) the materially adverse action was causally linked to the protected conduct.

Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007) (*citing* Burlington Northern v. White, 548 U.S. at 68, 126 S.Ct. at 2415). "The plaintiff in a retaliation case must present sufficient evidence for a reasonable jury to conclude that [his] protected conduct was a determinative factor in a materially adverse employment action taken by the employer." Hervey v. County of Koochiching, 527 F.2d at 722.

The United States Supreme Court has explained:

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace."

Burlington Northern v. White, 548 U.S. at 68, 126 S.Ct. at 2415.

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

Burlington Northern v. White, 548 U.S. at 67-68, 126 S.Ct. at 2414-15 (citations omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 68, 126 S.Ct. at 2415.

The conduct which formed the basis of plaintiff's retaliation claim as set forth in her EEOC complaint included that, while she was on leave, she discovered that hospital staff were gossiping that she had been suspended. She requested Ardean Vernon to send a memo to staff advising plaintiff would return to work, which she alleged Vernon failed to do. When she inquired whether the rumors were true or whether she still had a job, she was asked whether she was going to "put in her leave." She claims Vernon failed to be compassionate and sympathetic toward plaintiff, and plaintiff felt like she was an outcast for reporting the sexual harassment. She claims that, over the next few months, she wanted to claim leave but was not allowed to do so. She was threatened with being AWOL because she was absent without having requested

leave. The record shows that she eventually was allowed to claim leave by inputting leave requests from her home and was not ever found to be AWOL.

Plaintiff claims that her work station was moved in retaliation for filing a sexual harassment claim. The record is clear that plaintiff claimed Rosebud IHS failed to protect her from Councilman Rick Young. She claimed he was allowed to come to the hospital and she was not notified that he was there. The day after she made her complaint, her work station was moved. Plaintiff has not shown that moving her work station was an adverse employment action. She cannot make out a prima facie case that moving her work station was motivated by intentional discrimination.

Plaintiff has not established a prima facie case of materially adverse employment action resulting from her sexual harassment claim. In fact, she has shown no adverse employment action. The Eighth Circuit held that a Title VII plaintiff cannot make retaliation claims "based on personality conflicts, bad manners, or petty slights and snubs." Higgins v. Gonzales, 481 F.3d at 591. "What is absent from the record is evidence showing [the supervisor's] anger and related actions materially and adversely affected [plaintiff's] life such that a reasonable employee in [plaintiff's] shoes would be dissuaded from complaining." Id. Plaintiff cannot make out a prima facie case of retaliation. Plaintiff has not shown any action on the part of Vernon which was materially adverse after plaintiff engaged in protected activity.

There are no genuine issues of material fact in this case and a summary judgment should be granted.

## ORDER

Now, therefore, based on the foregoing,

IT IS ORDERED that defendant's motion, Doc. 32, is granted. Judgment is entered in favor of defendant on all claims. Costs shall be taxed.

Dated this 11th day of March, 2008.

BY THE COURT:

*[signature]*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *[signature]*
DEPUTY
(SEAL)